IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DETRON SMITH, § | | |
| Plaintiff § | | |
| § | | |
| v. § | | CIVIL ACTION NO. |
| § | | Case No. 1:22-CV-928 |
| § | | |
| § | | |
| NFL PLAYER DISABILITY & § | | |
| NEUROCOGNITIVE BENEFIT PLAN, § | | |
| Defendant § | | |

# PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Detron Smith seeks total and permanent (T&P) disability benefits under the NFL Player Disability & Neurocognitive Benefit Plan (Disability Plan). The Disability Board of the Plan abused its discretion in denying Smith's claim for T&P disability benefits.

## I. PARTIES

1. Plaintiff Smith is a resident of Austin, Travis County, Texas.

2. Defendant Disability Plan is a multi-employer welfare benefit plan that can be served with citation by serving the Disability Board, NFL Player Disability & Neurocognitive Benefit Plan, 200 St. Paul St., Suite 2420, Baltimore, MD 21202-2040.

1

**II. JURISDICTION AND VENUE**

3. This lawsuit is a claim for T&P disability benefits brought under the authority of 29 U.S.C. §1132(a)(1)(B). This court has jurisdiction over these claims under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") since the Disability Plan is an ERISA welfare benefit plan. Venue is proper in the Western District of Texas, Austin Division, in accordance with 29 U.S.C. §1132(e)(2) since the T&P disability benefits owed by the Disability Plan are to be paid to Smith at his home in Austin, Texas.

**III. STATEMENT OF FACTS**

4. After attending Texas A&M and playing football for the Aggies, Smith played fullback and on special teams in the National Football League (NFL) for eight seasons. He played for the Denver Broncos for six seasons, from 1996 to 2001, and for two seasons (2002 and 2003) he played with the Indianapolis Colts. His specialties were blocking and making big hits; he was a fan favorite for his willingness to sacrifice his body for the team. He was selected to the Pro Bowl in 1999 and won two super bowl rings while playing with Denver (1997 and 1998). Injuries piled up during his career. The Colts and Broncos medical records are laden with records of treatment for ankle, knee and shoulder injuries, and peppered with records of repeated Toradol injections that Smith was willing to take in order to get back on the field. Smith had two right ankle surgeries (arthroscopy with resection of anterior distal tibial osteophyte while in Denver and then an

arthroscopy for treatment of osteochondral lesions while playing for Indianapolis) and a right knee surgery (repair of a lateral meniscus tear) while still an NFL player. He suffered injuries to both knees, both ankles, his neck, shoulders, both hamstrings, both elbows, his feet, his abdomen, and his hands during his NFL career.

5. Due to chronic pain and reduced mobility and speed resulting from his physical injuries, along with chronic headaches and mental impairment due to concussions and sub-concussive head trauma, 2003 was his last season in the NFL. He failed the physical in 2004 due to his post-surgical right knee impairments.

6. As a result of his physical and mental impairments, Smith was not able to sustain full-time work after he retired from the NFL. He returned to College Station and attempted to finish his college degree at A&M (he was approximately 16 credits short of graduating when he left to play in the NFL), but due to chronic pain, inability to focus, and memory impairment he couldn't pass his classes. He attempted work as an assistant coach and in sports broadcasting, but his chronic pain and inability to concentrate, along with the side effects of strong pain medication that he required, prevented him from sustaining any full-time work.

7. Unable to work, in 2009 Smith applied for T&P disability benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan (Retirement Plan).[1] With

---

[1] When Smith submitted his application for disability benefits in March of 2009, a player's right to disability benefits was considered under the terms of the Retirement Plan, a comprehensive benefit plan that provided former players both pension benefits and welfare benefits, including disability benefits. If an eligible player was found

his application he listed his injuries or impairments from playing pro football as follows: cervical neck, lumbar spine, bilateral shoulders, right hip, bilateral biceps, bilateral elbows, bilateral forearms/wrists, bilateral hands, bilateral knees, bilateral ankles, bilateral feet, and headaches/memory loss/insomnia.

8. In 2009, the two groups responsible for deciding whether or not a player qualified for disability benefits available under the Retirement Plan were 1) the Disability Initial Claims Committee ("DICC"), an entity consisting of two people, one appointed by the NFL Players Association and one appointed by NFL Management Council, and 2) the Plan's Retirement Board ("Retirement Board"), consisting of six people, three appointed by the NFL Players Association and three appointed by NFL Management Council.[2] Following the requirement that a benefit claim made under a pension or welfare plan governed by ERISA receive an initial decision and then receive a full and fair review of any adverse benefit determination by a plan fiduciary, the DICC was the initial decision maker and the

---

disabled and that disability was related to his football career, he would be paid benefits from the Retirement Plan and additional benefits under a welfare plan called the NFL Player Supplemental Disability Plan (Supplemental Plan). As a result of a subsequent collective bargaining agreement, the NFL pension and welfare benefit plans were separated (other than for players already receiving welfare benefits under the Retirement Plan) so that applications for disability benefits submitted after January 1, 2015 are considered and, if approved, paid under the terms of the Defendant NFL Player Disability & Neurocognitive Benefit Plan (Plan). The Disability Plan replaced the Supplemental Plan.

[2] The DICC and the Retirement Board (later the Disability Board for disability claims), and the individuals who work in the Plan office, are sometimes collectively referred to as the Plan administrators. The NFL benefit plans are multi-employer Taft-Hartley plans, requiring the decision-making bodies (the DICC, the Retirement Board, and the Disability Board) to have an equal number of representatives, half appointed by the players union and half appointed by management.

six Retirement Board members were the plan fiduciaries who conducted the fiduciary review of a claim that was denied.

9. After independent medical exams by specialists selected by the Plan administrators, an orthopedic surgeon and a neurologist, the DICC determined that Smith didn't qualify for T&P disability benefits under the Retirement Plan.

10. Smith appealed to the Retirement Board. In his appeal he explained that it was the combination of his physical and mental impairments, when considered together, that caused him to be unable to complete his classes at A&M and engage in full-time work. In September 2009, the Plan administrators sent Smith to a medical institution in California, the Rancho Los Amigos National Rehabilitation Center, for a complete assessment of Smith's impairments and his ability to work. The assessment lasted two days and included a functional capacity evaluation (FCE). The FCE evaluators found that Smith did "not demonstrate the ability to sustain work effort or tolerate work on a consistent daily basis due to his physical symptoms and problems with concentration & frustration."

11. After receiving the complete evaluation of Smith's ability to work from Rancho Los Amigos, in its February 2010 meeting the Retirement Board overturned the DICC's adverse benefit determination and awarded Smith T&P disability benefits. Smith's T&P disability benefits were paid retroactively from

January 2009.[3] The Retirement Board's favorable decision was based upon the FCE performed at Rancho Los Amigos, which assessed the combination of Smith's orthopedic, neurological, neurocognitive, and psychiatric impairments and their combined effect on his ability to engage in full-time work.

    12. Smith received T&P disability benefits until December 2016. Although the combination of Smith's impairments had not improved, the Plan administrators sent Smith to an orthopedic surgeon, Hussein Elkousy, M.D., for re-evaluation of his qualification for continued T&P disability benefits under the Retirement Plan. Dr. Elkousy opined that, based on his orthopedic impairments, Smith could engage in light-duty work. As a result, the DICC terminated Smith's T&P disability benefits effective December 2016.

    13. Through counsel, Smith appealed, indicating that it was the combination of impairments that caused his continued inability to work. With his appeal Smith submitted a lengthy vocational analysis that was performed in 2017, indicating that due to his physical and psychiatric impairments and his lack of transferable skills, Smith was unable to perform any occupation in the local or national economy.

    14. Rather than sending Smith for a holistic evaluation in which the combination of his impairments and their impact on his ability to work would be analyzed by an expert or experts, as had been done at Rancho Los Amigos in

---

[3] The Retirement Plan provided that the beginning date of T&P disability benefits was two months prior to the month that the player applied for the benefits. Since Smith applied in March 2009, his benefit commencement date was January, 2009.

2009, the Plan administrators chose to keep the puzzle pieces apart. Smith was sent to four specialists who regularly performed evaluations of former NFL players at the request of the Plan administrators for the purposes of determining disability: an orthopedist, Dr. Paul Saenz, a neurologist, Dr. Eric Brahin, a neuropsychologist, Dr. Janya Mercado, and a psychiatrist, Dr. Raymond Faber. Each limited their opinions regarding disability to their specialty: Dr. Saenz concluded that Smith was not disabled based upon his orthopedic conditions; Dr. Brahin concluded that Smith was not disabled due to his neurological conditions; Dr. Mercado concluded that Smith was not disabled based upon his neuropsychological conditions, and Dr. Faber concluded that due to psychiatric conditions, namely depression, Smith was disabled.

15. Instead of overturning the DICC's decision to terminate Smith's T&P disability benefits based upon the conclusions of Dr. Faber, the Retirement Board sent Smith to another psychiatrist, in the Plan's nomenclature a Medical Advisory Physician (MAP), whose opinion regarding disability due to psychiatric impairments would be binding upon the Plan and the Retirement Board. The MAP determined that Smith was not T&P disabled by psychiatric impairments. As a result, the Retirement Board upheld the termination of Smith's T&P disability benefits.

16. Smith's impairments did not improve. He remained unable to work. Through counsel, he submitted a new application for T&P disability and

7

neurocognitive disability benefits in February 2019.[4] This application was submitted to the Disability Plan. With his application Smith submitted 20 exhibits, which included prior medical records, the FCE from Rancho Los Amigos, prior determinations by Plan-appointed physicians, and the vocational report from 2017 that had been submitted with Smith's prior appeal.

17. With machine-like precision the Plan administrators separated the puzzle again and sent Smith to four of their regularly-retained specialists: Dr. Brian Berman (neurologist), Dr. Neil Deutch (neuropsychologist), Dr. Stephen Moe (psychiatrist), and Dr. Aakash Shah (orthopedist). Dr. Berman and Dr. Deutch determined, in a jointly written report, that Smith had a neurocognitive impairment, as that term is defined in the Disability Plan. Dr. Shah determined that Smith was not disabled due to his orthopedic impairments. Dr. Moe determined that Smith was not disabled due to a psychiatric disorder.

18. As a result, the DICC awarded Neurocognitive Disability ("NC") benefits to Smith, entitling Smith to $3,000 per month under the Disability Plan, but denied his claim for T&P disability benefits. The written notification of the NC award and the denial of T&P disability benefits was sent to Smith on April 11, 2019.

19. Smith timely appealed the DICC's decision to deny his claim for T&P disability benefits. Smith repeated, and emphasized, that the puzzle pieces that

---

[4] In addition to T&P disability benefits, the Disability Plan provides benefits for NFL players with neurocognitive impairments.

were Smith's various physical and mental impairments needed to be put together in order to properly determine whether or not Smith was disabled, as that term was defined in the Disability Plan. His counsel wrote in the appeal letter "as stated in his application and now again on appeal, Detron again, humbly requests actual consideration of the COMBINATION of orthopedic, psychiatric, neuropsychological and neurological conditions."

20. This request was ignored. The Plan administrators swiftly broke the puzzle apart again and sent Smith to the following specialists who are regularly retained by the NFL to evaluate disability: Dr. George Canizares (orthopedist), Dr. Stephen Sergay (neurologist), Dr. Rodney Vanderploeg (neuropsychologist) and Dr. Sheba Khalid (psychiatrist). The conclusions were predictable: Dr. Canizares concluded that Smith was not disabled from an orthopedic standpoint; Dr. Sergay concluded that Smith was not disabled as a result of neurologic impairments; Dr. Vanderploeg concluded that Smith was not disabled due to neuropsychological conditions; and Dr. Khalid concluded that Smith was not disabled due to psychiatric conditions.

21. As a result, the Disability Board denied Smith's appeal, providing Smith notice of their decision on February 13, 2020. In pretending that its hands were tied by the terms of the Disability Plan, the Board emphasized Disability Plan Section 3.1(c), which states that in order to receive T&P disability benefits the Disability Plan requires that at least "one Plan neutral physician must conclude that the Player is substantially unable to engage in any occupation for

9

remuneration or profit (the Plan's standard for T&P benefits)." ("Plan neutral physician" is another name for each member of the regularly-used cadre of specialists who are paid well to evaluate former NFL players at the request of the Plan administrators.). The Disability Board's adverse benefit determination letter stated as follows:

> "in this case, the Disability Board found that you did not meet this threshold requirement because eight Plan neutral physicians have examined you, and none found that you are substantially unable to engage in any occupation or employment. The Disability Board further noted that Mr. Katz's comments concerning the cumulative effect of your impairments cannot override the express requirements of Plan Section 3.1(c)."

22. In the denial letter, sent by the Plan Director Michael B. Miller on behalf of the Disability Board, Smith was advised that he had exhausted the administrative claims process under the Disability Plan and his only alternative, if he wanted to challenge the Disability Board's decision, was to file suit under Section 502(a) of ERISA.

23. Smith exhausted his administrative remedies as required by the Plan and by ERISA and is now filing suit under Section 502(a) of ERISA.

## IV. CAUSE OF ACTION UNDER ERISA §1132(a)(1)(B)

### Claim for Benefits Under §1132(a)(1)(B)

24. The Disability Board's repeated refusal to consider Smith's T&P disability claim in a holistic manner, i.e. it's repeated choice to leave the pieces of the puzzle scattered on the Board table instead of making the effort to put them together, was an abuse of discretion. The reason presented in its final denial, that

the plan requirement that Smith be found disabled by at least one "Plan neutral physician" precluded the Board's ability to evaluate Smith's combined impairments and their effect on his ability to work, was absurd.  In NFL nomenclature, it was a misdirection play.  Clearly, there were and are plenty of medical specialists who evaluate the combined effects of physical and mental conditions and their impact on employability.  The Board had discretion to require a holistic evaluation of Smith rather than leave the puzzle pieces scattered on the table.  Its decision to leave the puzzle pieces scattered on the meeting table was not out of carelessness.  It was a deliberate choice.

25. The Board's reliance on puzzle pieces (and its resistance to Smith's claim and appeal request that his combined impairments be evaluated) in this instance was especially unreasonable, i.e. lacked any resemblance to good faith claims handling, because Smith had previously been evaluated holistically at Rancho Los Amigos in 2009 (a Plan neutral) and was found disabled as a result of the combination of his physical and mental impairments.  Smith's impairments had not improved.  There was no event that occurred between 2009 and 2020 that indicated that the combined effects of Smith's physical and mental impairments had improved.  Indeed, "Plan neutral" Dr. Faber found him disabled as a result of depression in 2017 and Dr. Berman and Dr. Deutch found him neurocognitively impaired in 2019.  Further, his counsel had provided a lengthy vocational report in 2017 that made it clear that Smith remained unemployable.  The result is that the only evidence in the administrative record (the claim file is known as the

administrative record in ERISA parlance) as to whether or not Smith is disabled from a combination of physical and mental impairments regarding his 2019 claim for T&P disability benefits is that he is disabled by the combined effect of his many impairments. He is entitled to T&P disability benefits under the Disability Plan.

26. The Board's denial of Smith's claim for T&P disability benefits was an abuse of discretion.

## V. RELIEF REQUESTED

### Claim for Benefits Due Under 1132(a)(1)(B)

27. Smith seeks T&P disability benefits. The decision by the Disability Board in response to his 2019 application was an abuse of discretion.

28. The Disability Plan has four tiers of T&P disability benefits that are differentiated by the status of a player, active or retired, the date a player's NFL career ended, and the date of onset of a player's disability. Smith is entitled to the Inactive A tier of benefits under the Disability Plan because his 2019 application for which he should be awarded T&P disability benefits was submitted within 15 years of his last credited season.[5] His last credited season ended on March 31, 2004. His application was received by the Plan office on February 27, 2019, which was within 15 years of his last credited season.

---

[5] The Disability Plan provides that Inactive A T&P disability benefits will be awarded to any player whose written application which resulted in an award of benefits was received by the Plan office within 15 years of the player's last credited season.

12

29. The Disability Plan provides that T&P disability benefits will be paid beginning two months prior to the date that the application that resulted in the award of benefits was submitted. Since Smith's application was submitted in February 2019, he is entitled to T&P disability benefits beginning in December 2018.

30. A player approved for Inactive A T&P disability benefits is entitled to $11,250 per month. Smith is entitled to the amount of $11,250 per month beginning December 2018, two months before his application was received. But the Disability Plan does not pay T&P disability benefits on top of NC benefits. His T&P disability benefit must be reduced by his NC benefit until the date of a favorable judgment.

31. As of January 1, 2022, Smith's NC benefit increased from $3,000 to $3,500 per month.

32. Since Smith has been receiving NC benefits since December 1, 2018, he is entitled to T&P disability benefits in the amount of $8250 per month ($11,250-$3000) from December 1, 2018 through the end of 2021. The sum of benefits owed to Smith for this period is $305,250.00 ($8250 x 37 months).

33. Because of the increase in NC benefits effective January 1, 2022, as of January 1, 2022 and thereafter, the monthly T&P disability owed to Smith by the Disability Plan is $7750.00. The sum of T&P disability benefits owed to Smith for the period from January 1, 2022 through December 31, 2022 is $93,000 ($7750 x 12 months).

34. Therefore, as of December 31, 2022, the Disability Plan owes Smith back benefits of $398,250.00.

35. Smith is entitled to these Inactive A T&P disability benefits, plus additional benefits that accrue after January 1, 2023 but during the pendency of this litigation at the rate of $7750 per month.

## VI.  ATTORNEYS' FEES

36. Smith prays for his attorneys' fees and costs under 29 U.S.C.A. 1132(g).

## PRAYER

WHEREFORE, Smith prays that the Court find abuse of discretion by the Disability Board and award back benefits in the amount of $398,250, along with additional benefits that accrue after January 1, 2023 but during the pendency of this litigation at the rate of $7750 per month.  He also prays for his attorneys' fees, for pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which he may show himself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Commerce Building
314 E. Commerce, Suite 300
San Antonio, Texas  78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By: _/s/ Jeffrey E. Dahl_
**Jeffrey E. Dahl**
**Texas State Bar No. 05310900**
**Attorney for Plaintiff Detron Smith**